IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| COREY A. HUTCHERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL ACTION NO. 14-00397-CG-N |
| | ) |
| INTERNATIONAL MARINE AND | ) |
| INDUSTRIAL APPLICATIONS, | ) |
| LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the Motion for Summary Judgment (Doc. 39), Memorandum in Support (Doc. 40), and Notice of Filing Exhibits (Doc. 41), filed by International Marine and Industrial Applicators, LLC[1] ("Defendant"), and the response (Docs. 44 & 45) filed by Corey A. Hutcherson ("Plaintiff"). For the reasons set forth herein, Defendant's motion for summary judgment is due to be **GRANTED**.

## I. BACKGROUND

Plaintiff filed this action pro se, alleging claims of discrimination under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. (Doc. 1, p. 1). The facts that allegedly support such claims are found in Plaintiff's complaint, repeated verbatim below:

---

[1] Plaintiff sued "International Marine and Industrial Applications, LLC," but the appropriate spelling of Defendant's name is "International Marine and Industrial Applicators, LLC."

> Plaintiff Hutcherson applied for and was hired by the Defendant, International Marine and Industrial Applications, LLC, (IMIA) on or about June 13, 2013 as a Sandblaster. On or about June 19, 2013, Plaintiff Hutcherson reported for work. He was given a helmet by the agent, servant and/or employee to wear while he was sandblasting. The helmet did not fit over Plaintiff Hutcherson's glasses. He informed his employer through its agent, servant and/or employee of the type helmet he was able to use. He was informed that the only one they used was the one that would not fit over Plaintiff Hutcherson's glasses. Plaintiff Hutcherson then asked if he could have a little time to try to obtain contacts. He was then asked the question, "you can't see anything without your glasses?" Hutcherson answered "No", He was then told by (IMIA)'s agent, servant and/or employee that they could not use him and to go home. Thus, the complaint with U.S. EEOC.

Id. at 2-3. Plaintiff received his Notice of Right to Sue from the United States Equal Employment Opportunity Commission, and this action followed. Id. at 5.

## II. ANALYSIS

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's mission is to "determine whether there is a genuine issue for trial" and not to "weigh the evidence." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The burden is on the moving party to show that there is no genuine dispute as to any material fact. Id. at 256. In conducting its summary judgment analysis, the Court must construe all evidence "in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

After the movant meets its burden, the burden shifts to the nonmoving party

2

"to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the nonmoving party fails to do so, the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Further, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Pro Se Litigants

The pro se litigant's road to trial is fraught with peril. Ever mindful of the difficulties that pro se litigants face, a trial court will hold pro se pleadings "to a less stringent standard than pleadings drafted by attorneys." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). The court will therefore "liberally construe" the pro se pleadings. Fernandez v. United States, 941 F.2d 1488, 1491 (11th Cir. 1991). Despite this leniency, pro se litigants must "conform to procedural rules." Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002). A pro se litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). The Local Rules of this Court set out the following: "All persons proceeding pro se shall be bound by,

and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil and Criminal Procedure, unless excused by Court order." Gen. Local R. 83.5(a). The Supreme Court has recognized that the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers," stating that the Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." McNeil v. United States, 508 U.S. 106, 113 (1993). Pro se litigants proceed at their own risk.

### C. The Americans with Disabilities Act of 1990

The Americans with Disabilities Act states, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2012). "Disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment . . . .

Id. § 12102(1). An impairment meets the first definition if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii) (2015). "Substantially limits" is to be interpreted "broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." Id. § 1630.2(j)(1)(i). The Act includes a

non-exclusive list of "major life activities," including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (2012). The ADA conveniently addresses poor eyesight, stating, "The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity." Id. § 12102(4)(E)(ii). The Act defines "ordinary eyeglasses or contact lenses" as "lenses that are intended to fully correct visual acuity or eliminate refractive error." Id. § 12102(4)(E)(iii)(I).

Plaintiff has not presented any direct evidence of ADA discrimination, so his claim will be analyzed pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). Under this analysis, the employee has the initial burden of proving a prima facie claim of disability discrimination by showing: "(1) he is disabled; (2) he is a qualified individual; and (3) he suffered unlawful discrimination because of his disability." Jarvela v. Crete Carrier Corp., 776 F.3d 822, 828 (11th Cir. 2015). Defendant addresses the first element and claims that Plaintiff is not disabled. (Doc. 40, p. 11). Defendant argues that Plaintiff does not suffer from a "physical or mental impairment that substantially limits one or more major life activities of . . . [an] individual." Id. (quoting 42 U.S.C. § 12102(1)(A) (2012)) (internal quotation marks omitted).

Plaintiff has not presented any life activities in which his participation is

substantially limited, so the Court is left to speculate. Plaintiff has "20/60 minus" vision in each eye, although he has 20/20 vision with corrective lenses. (Doc. 41, p. 26). In his deposition, Plaintiff conceded that he has no issues driving or reading when wearing glasses. Id. at 10. He rides horses, does yard work, tends to his garden, drives all-terrain vehicles, and participates in other activities. Id. at 12. Plaintiff has worked a variety of jobs with his vision problem, including sandblasting. Id. at 13-17. Except for his time with Defendant, Plaintiff's eyesight has not hindered his ability to do any job. Id. at 25. He has never had eye surgery and does not regularly visit doctors for his eyes. Id. at 9-10. From the evidence offered by Defendant, largely consisting of Plaintiff's own deposition, it is apparent that Plaintiff is not substantially limited in any readily discernible life activity, and Plaintiff has not advanced any evidence or argument to the contrary. Plaintiff has failed to make out a prima facie claim of ADA discrimination based on the first definition of "disability," so Defendant is entitled to summary judgment on this part of Plaintiff's claim.

## D. Remaining Claims

Although Defendant's motion for summary judgment requested that judgment be entered against Plaintiff "as to all claims asserted in this action," the motion, memorandum in support, and exhibits fail to address whether Plaintiff's ADA claim fits the remaining two definitions of disability: "(B) a record of such an impairment; or (C) being regarded as having such an impairment." See 42 U.S.C. § 12102(1) (2012). An employee "may establish coverage under any one or more of

these three prongs of the definition of disability . . . ." 29 C.F.R. § 1630.2(g)(2) (2015). Further, the motion did not address Plaintiff's claim under Title VII of the Civil Rights Act of 1964. This latter claim appears to be meritless and perhaps frivolous, but the Court will permit Defendant to address the claim rather than dismiss it sua sponte. Defendant has leave until March 23, 2016, to file any further dispositive motions addressing these remaining claims.

## CONCLUSION

Defendant's motion for summary judgment is hereby **GRANTED** as to his claim made under the first definition of "disability".

**DONE** and **ORDERED** this 8th day of March, 2016.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE